Allen, J.
 

 Did the Public Utilities Commission act unreasonably and unlawfully in permitting the additional run?
 

 The old schedule of the coach company provided for a departure from Lorain at 4:40 p. m., with the next departure at 6:15 p. m., running into Cleveland. The new schedule provides for a bus at 4:30 p. m., and for one at 5:30 p. m., and one at 6:30 p. m. The only reason given for granting this additional run is contained in the following questions and answers:
 

 “Q. Now, Mr. Sanford, just state briefly to this commission your reasons for asking this change in schedule? A. Why, we have a couple of reasons which are good reasons. One is under our new change of schedule we can operate what it now takes four busses, we could operate with three in a pinch. The bus leaving Lorain at 6:30 is due in Cleveland at 7:50, and there is also one due out of Cleveland at 7:50, and occasionally something goes wrong with the bus you can’t complete your run. The bus regularly due out of Cleveland at 7:50, there one due in there, he can protect that line; at Lorain we could receive telephone calls at the garage, we could substitute another bus and put that bus on time, so just it is a protection for our own run. And also we get in there on the hour and people that are commuter riders want to know why we couldn’t get in there ten minutes sooner; they would have they say another hour’s sleep, because getting in on the hour
 
 *176
 
 if they go to work on the hour that just holds them back enough so they have to take a bus an hour sooner, and by getting in at ten minutes of the hour or fifteen or twenty of it would be more convenient for them.
 

 “Q. Are there any other reasons'? A. No; I don’t know of any other reason.”
 

 It is to be noted that the second reason that Mr. Sanford states for asking the change in schedule relates to the general change in the schedule, and not to the,addition of the single run. It is a little difficult to understand whether the first reason which he cites relates only to the general change of schedule or to the additional run. But, even if it does state some ground for establishing this additional run, no other reason is contained in any portion of the testimony. No evidence is given as to any number of people who wish to use the new run proposed. No passenger presents himself to testify that he wishes to be carried on such a run. As a matter of fact, interpreting the first statement of Mr. Sanford as giving a reason for adding this single run, it simply states that there will be a convenience to the motor transportation company in the operation of its busses if the additional run is allowed.
 

 It has been repeatedly held by this court that additional service is justified only when the evidence establishes that the public convenience and necessity will be served by the granting of such additional service. Evidence that the convenience of the common carrier will be served by instituting such additional operation is not of itself alone evidencé
 
 *177
 
 that the public convenience and necessity will thereby be served. The first contention of the protestant will therefore be upheld.
 

 With regard to the rearrangement of the schedule, we next inquire whether under the record the Public Utilities Commission should have permitted the coach company to change its schedule from a departure at 6:40 a. m., and every hour thereafter until 4:40 p. m., to 6:30 a. m., and every hour thereafter until 5:30 p. m., with an additional run at 6:30 p. m.
 

 The applicant stated that the reason for the new schedule was as follows:
 

 “Yes; we have had people that work in the stores there, girls, clerks, stores in Cleveland open up several of them at 9 o ’clock, 8 o ’clock, or the shops start at 8 o’clock, and they said, if they had an additional ten minutes, they could probably get to their work on time; and then by getting that additional ten minutes they could, in other' words, get more sleep. ’ ’
 

 No passengers were present to corroborate this claim. On the other hand, the record shows that prior to January 17, 1927, the departure time of the cars of the railway company from Lorain was 50 minutes after the hour, leaving hourly from 7:50 a. m. to 7:50 p. m. Prior to January, 1927, the coach company had its busses leaving at 40 minutes after the hour, or ten minutes ahead of the railway company’s cars. During this period the record shows that the coach company’s operators solicited passengers for Cleveland in front of the Lake Shore Electric Company’s ticket office, just east of its own ticket office. These facts are embodied in the record in the testimony of the coach company’s secretary,
 
 *178
 
 who admitted that this had been the practice. He said:
 

 “We have a couple or three years ago, but I won’t say we have in the last * *
 

 Later, the secretary was asked the following question with reference to the period prior to the change of schedule, when the busses left ten minutes before the traction, and when the witness himself was driving:
 

 “And didn’t you stop, come to a dead stop by the curb, and solicit passengers who might be standing on the sidewalk in front of the Lake Shore Electric station to get in your bus and ride to Cleveland?”
 

 In response to this question, the witness’s answer was:
 

 “Why, what do you suppose would happen?”
 

 Later the same witness admitted that during the past year, when he had not been personally driving, he had observed the company’s drivers stopping at the corner in question, 75 feet east of the trolley station, and picking up passengers.
 

 On January 17, 1927, the railway company rearranged its schedule, and established a departure time of 40 minutes after the hour. Immediately thereafter the coach company applied for this modification of the schedule. There is testimony in the record to the effect that, since the change of schedule has been made by the railway company, the coach company has not picked up so many passengers in front of the railway company’s ticket office as it had in the past.
 

 In view of the fact that for four years the coach company has operated its busses on a schedule which will deposit passengers at the public square
 
 *179
 
 in Cleveland on the even hour, and has at no time sought to make a change until the change in the schedule of the Lake Shore Electric Railway Company’s schedule on January 17, 1927, and since not one passenger appears to ask for the change, it is evident that this change in schedule is requested, not because of public' convenience and necessity, but mainly in order to pick up prospective passengers from, a competing traction company. Under such circumstances, as clearly established as this record shows them to be, it is unreasonable and unlawful for the Public Utilities Commission to authorize a change of schedule.
 

 Order reversed.
 

 Marshall, C. J., Robinson, Jones and Matthias, JJ., concur.